May it please the Court, my name is Leticia Marquez and I'm with the Federal Public Defender's Office. Along with Charlotte Merrill, we represent Ernest Gonzales. I'd like to reserve five minutes for rebuttal. Okay, keep track. It goes counting down. We'll try to help. I'd like to start today with Claim 13 of our opening brief, which is the District Court's denial of Mr. Gonzales' motion to amend his habeas petition. The District Court denied Mr. Gonzales' motion to amend his habeas petition with ineffective assistance of counsel claims based primarily on three reasons. Based primarily on three reasons. First, the District Court faulted Mr. Gonzales for withdrawing his ineffective assistance of counsel claims in the year 2000 from his habeas petition, despite the fact that keeping those claims in the petition would have rendered the petition mixed and subject to dismissal under Rose v. Lundy. But he did withdraw, was it 13 or something like that at that point for that very reason? Yes, Your Honor. And the second reason the District Court denied the motion to amend is it's clear from the District Court order that it faulted Mr. Gonzales for pursuing his rights to be competent during habeas proceedings, which under this circuit's law he was entitled to do under Rowan. Third, the District Court also faulted Mr. Gonzales for not amending back his habeas claims earlier, despite the fact that all litigation was stayed and that there was no vehicle under which to amend those claims until Martinez was decided. As I read the district judge, he seemed to be willing to allow the suit to go forward if there had been a prompt attempt to amend after Martinez. So it's the District Court's order is misleading, where it seems, it looks like Gonzales waited months and months to amend his petition. If I may, let me run down what would actually happen. So we were in the list. Can I just interject for a minute? Even if he waited months and months, if you do the tolling by a stop-clock method, he was still timely, is that right? I believe so, yes. So if we thought that, particularly after the Supreme Court opinion last year in Artis, there was that you do do a stop-clock, then whether he waited months and months would be irrelevant. I agree. Because he was timely if you take out all of the time until the stay was lifted. I agree with that, Your Honor. Okay. Yes. But just to you, or I apologize, because I know you have a train of thought. No, I have no train of thought. For my part, what troubles me the most here is Martinez and its role. What's your best authority for the idea that Martinez constitutes an extraordinary circumstance out of the meaning of the statute? Well, I believe the change of the law. We cited a few cases in our brief that a change in the law would be an extraordinary circumstance. In what cases are you referring to? I'm sorry, Your Honor. I don't have that right in front of me. While you're doing that, let me ask you, would Martinez have to be retroactive in order for that to benefit your client here? I don't believe so. Because Mr. Gonzales raised his or attempted to raise his claims through Martinez as soon as they were available to him, as soon as he was back in district court. My understanding is it's not that Martinez is the extraordinary circumstance. The extraordinary circumstance is that before Martinez, these were procedurally defaulted claims that couldn't properly be asserted. So Martinez is just the end of the extraordinary circumstance, essentially, because at the point of Martinez, now you can assert them. That's correct. That's another way of looking at it. The trajectory that Mr. Martinez's ineffective assistance of counsel claims has been very, I want to call it crazy, but it's extraordinary. He's been trying to exhaust these ineffective assistance of counsel claims since his motion for new trial. And he raised these claims. They didn't go anywhere. He tried to raise them on direct appeal. The direct appeal counsel told him, no, you need to raise them during post-conviction proceedings, at post-conviction proceedings. Which was correct. That was correct. It was correct, yes. And at post-conviction proceedings, as the Court has probably read, he was given ineffective counsel, and we actually consider the relationship between counsel and Mr. Martinez an abandonment under Maples. This attorney got on the case early on. She met with Mr. Gonzalez once in the entire proceedings. She wanted him to come up with his claims. She didn't take any of his calls. Ultimately, she tried to get off his case two months into it because she was too busy. She reluctantly filed a post-conviction petition that was 15 pages of arguments, six claims, totally record-based. And these claims were, in fact, raised by the, in a summary fashion, by the other lawyer. Well, some of the claims were raised by the other lawyer. And that was after, after, after she, Kemper had already filed her post-conviction petition and withdrawn. And Mr. Gonzalez is continuing to try to exhaust these claims, and he filed motions for new counsel, motions to open up the petition again, filed a supplement, and then it was transferred to a different judge. That judge offered, brought in the post-conviction lawyer back, asked her to consider these claims. They put on a second lawyer to brief these claims. And even after the second lawyer's supplemental petition, which was also very deficient, it had no investigation, no outside-the-record evidence. Again, it was a short petition with barely any analysis. Even after that, Karen Kemper refused to raise those few claims in the petition for review to the Arizona Supreme Court. Kagan. So here's one question I have. What authority, does Martinez apply to PCR appellate IAC? We know after Davila that it doesn't apply to the direct appeal appellate IAC. So is there any question about whether, if the problem is that Kemper dropped them on appeal, does Martinez apply? So the law isn't settled on that. But is there any case law there? I don't believe so. But actually, the problem is, is the raising of the claims in the first place in the post-conviction petition. Because they were properly raised, and she didn't raise all the claims. She didn't do any investigation. She hired an investigator, and two weeks before the petition was actually due, that investigator went and spoke to Mr. Gonzalez and told him that no investigation had been conducted. And that was confirmed two weeks later when she filed record-based claims without any experts, without any investigation, despite the fact that Mr. Gonzalez had been requesting an investigation and experts to be. And you would say, therefore, that there was the PCR trial counsel, including the second guy, whose name I'm not remembering, Kaye? Yes. Were ineffective? Yes. Both were ineffective in not raising properly investigated post-conviction claims. Mr. Gonzalez is only shot at raising. And if you look at all the petitions that were filed by Mr. Gonzalez, a lot of those are very real substantive claims. Counsel, assume for a moment that the three of us have read all of what you've just told us here, and we're wrestling with the timing issue. Putting Martinez aside for a moment, what told the statute of limitations from September 2000 until June of 2008? Without Martinez, what else told it during that time, if anything? Well, I believe his incompetency, for one. The record is extensive. During that entire time? Yes. We believe he's been incompetent since we got on the case anyway. And actually, we believe . . . When was the proceeding involving incompetency? There was a period of time, but it wasn't coterminous with what I just mentioned, was it? No, it wasn't. So when the Federal Public Defender's Office started representing Mr. Gonzalez, we knew something. While we were trying to litigate his habeas petition, we were trying to have a relationship with Mr. Gonzalez, and without getting too much into attorney-client, we knew there was something wrong, and started to have experts evaluate him. We've had experts evaluate him in 2000, 2001, all the way through his career. Forgive me, counsel. So you're saying because you think he was incompetent, it didn't turn out that the court ultimately agreed after the hearing, but you thought he was. Is that enough to toll the statute of limitations? I believe so. Under laws, it's enough. And actually . . . And at what level of proof? Again, I know you believe that, but the district court concluded otherwise after extensive hearings. Actually, the district court did not conclude otherwise. The district court did not make a finding of incompetence or competence. But it didn't find that he was either, right? Right. The district court, the final order on competency was that until or unless the ineffective assistance of counsel claims were properly before the court, in other words, if the district court had granted the Martinez motion, then we would figure out whether . . . But I'm confused about why we're talking about the — Judge Smith is delineating a particular time period, as I understand it, 8 months in 2008? Is that — and why are we talking about those months? You seem to know, but I don't. Yeah. I'm — I thought the question was what it told it since the year 2000. Correct. Since the year 2000. So those — so we believe that Mr. Gonzalez's incompetence has told the inclusion of any outside-the-record claims. Well, what does incompetence have to do with it? I mean, isn't the problem the one you identified the first time, which is that because there was no authority to assert defaulted claims? Well, the question was aside from Martinez. Oh, okay. So . . . What I'm struggling with here is, I mean, Martinez really bothers me, frankly. I really need to get my arms around how that applies in this case. But putting that aside for the moment, I know you think he was incompetent. But even if he were, nobody made a determination during that period of time. He was represented. Some claims were made. Some claims were withdrawn. What do we do with that in terms of the statute of limitations during that period of time putting Martinez aside? So just to be clear, there was no finding of incompetence, but not for lack of trying, on Mr. Gonzalez's part. We moved for competency hearings, and we have 14 expert reports that all say he's psychotic. Right. And the court did not make a finding on that one way or another. Right. So it's kind of like neutral at that point. Exactly. So you have no court finding that says he's incompetent. You think he is. The state says he isn't. What do we do with that? The state doesn't say he isn't, but I understand your question. They're not agreeing with you. Let me put it that way. But you would also have to go back to 2000, and as you point out, it was during that very period that he, or shortly before that, that he was seemingly competently trying to raise certain issues and complaining about his lawyer not doing it and so on. And that was, what, in 1998, 1999, I guess? So you'd have to be able to get the incompetence back pretty far, well before you encountered it. Well, we believe that he's been suffering under a mental illness this year. Well, that may be, but the question is incompetence. He may have had the mental illness all along, but he seemed relatively competent for some period of his life because he was, precisely because he was, in fact, making reasonable requests with regard to what issues should have been raised and so on. Well, he seemed competent, but there was never a finding that he was competent below. I understand. And just because somebody is schizophrenic doesn't mean that they don't have, especially if it's a degrading disease. Well, that's the point. That's the problem. The problem is that you have to get the incompetence back from the time that you got into the case, which was when? 1999. Or 2000. And you say from the time you were in, but you don't have any. It was very shortly before that, that he was at least behaving in court as if he knew what was going on in court, right? Well, he was filing papers. Sensible ones. For sure. I.e., why aren't you investigating the IAC at the penalty page?  Right. But I guess I disagree that just because he was filing those papers means that he was competent at the time, because we know that he has had schizophrenia since, at least identified since 1988. But, counsel, with respect, it seems that you're asserting that because you believe and perhaps many doctors believe as well that he was schizophrenic from the same time he was a teenager. How does that affect the statute of limitations in this case? So if. That per se. Well, as I mentioned earlier, under laws, I believe that we have, that would. You said laws? You mean the case laws? The case laws, yes. I'm sorry. That would allow us to, that would allow equitable tolling if his mental illness. But doesn't that require a finding by a court that he's incompetent? It does, and we've been. You didn't get one, did you? We didn't get one, Your Honor, and that's the problem with this. Okay. But to go back to the other strain, what happened here exactly was he, 13 of these claims, including the ones you're complaining about now, I gather, is that right? Yes, Your Honor. Were dismissed. And he wasn't given a choice whether to stay and abate. That was not a choice. No, not at the time. They were withdrawn from the petition. They were withdrawn. And if he had gone to exhaust them, they would have been, they were procedurally defaulted in the sense that they were certainly too late as a matter of Arizona law. And he even tried to exhaust them because there was a second postconviction petition filed. Well, but the second one, it was certainly too late. But the question is whether it would have been. It was too late, and he was incompetent, because the attorney that was appointed for that case says in pleadings. So at that point, there was no point trying to get them back into the Federal procedure, because under binding law, he couldn't do it. No, he couldn't. He could have tried to do it futilely, but it would have been futile. So the question is whether he had some obligation to do a futile thing. And I don't believe he did. What would have been the point of that? So it isn't Martinez that's doing the tolling. What's doing the tolling is the fact that there was no way to get this back in. That's another point. Yes, Your Honor. Counsel, let me ask you a variation of this. Can an extraordinary circumstance begin after the statute of limitations has already run? I believe so, Your Honor. Can you cite any case law that would substantiate that position? No, it can't. How can that be? Well, it can begin in an extraordinary circumstance, but it won't make any difference if the statute has already run. It could be in an extraordinary circumstance, but who cares? Right. So I agree with Judge Fletcher. I know my colleague's answer, but I don't know your answer. I agree with Judge Fletcher. Or Judge Berzon. I was just echoing Judge Berzon. So your answer is what? That after the statute of limitations has run, can there be an extraordinary circumstance? If it began, yes. If what began? If the extraordinary circumstances began during that time. So if we were talking about Martinez, of course, it's a case that was decided at a particular time period. Are you saying that as of that date, we deal with it, or does Martinez have to relate back in order to help your client? Well, we could do we also briefed the relation back part of trying to get these claims back. We're dealing with the amendment issue, right? Correct. Correct. What's your position on the relation back of Martinez? Does Martinez help you if it doesn't relate back? Well, I've never understood why we have to relate back claims that are available under Martinez. It seems like a double burden. Well, it strikes me that the extraordinary circumstance argument with relation to Martinez is not that Martinez creates the extraordinary circumstance. The extraordinary circumstance was that they're defaulted and he can't bring them. And Martinez puts an end to the extraordinary circumstance. So Martinez marks the end of that period. But if the extraordinary circumstance is not Martinez, the extraordinary circumstance is during this period he simply can't bring the claims. And I'm not sure if that was clear in our brief, but that's the position that we're taking. And that position is? Is that the extraordinary circumstance was his inability, unavailability to bring these claims forward. And Martinez is the vehicle for which to bring these claims. So in other words, if I understand what you're saying, you've got this basket of how many claims there are, 60-some-odd claims? You've got this basket of claims. No matter what they are, they're just kind of accumulating in a big sack like Santa Claus. And when Martinez comes along, suddenly bring them. Is that your position? Because during that time something's gone wrong. Well, during that time there was no means by which to bring these claims. I suppose we could have raised them all with the first petition and had a mixed petition and gotten everything dismissed. Or we could have brought them back after he was unable to exhaust them in state court. I want to get back to my earlier question to you. If the statute of limitations had run on a particular claim in AEDPA before Martinez was decided, do you lose? Perhaps. I haven't thought about that. Well, I think the argument is that the extraordinary circumstance is that the claims that now would be possible under Martinez, which are entirely ineffective assistance of counsel claims, those are the only claims that can be revived under Martinez. The extraordinary circumstance is that they are not available to him until Martinez, and the reason they're not available to him is that his counsel was ineffective. And that's an extraordinary circumstance that lasts until Martinez. Now, if we never had Martinez, it would remain an extraordinary circumstance and he'd never be forgiven. But Martinez says, okay, well, that extraordinary circumstance is now gone. That's correct. And you can now bring them. So the question is whether or not his ineffective assistance of counsel in failing to bring the IAC claims that he really did have, then they look at least plausible, whether that is an extraordinary circumstance up until you get to Martinez. That's the issue. That's correct, Your Honor. So how would the limitations period run in the meanwhile? If that were true, how could the limitations period run in the meanwhile? How could it run in the meanwhile? You were asked whether if the limitations period had run in the meanwhile, would Martinez apply, and you said no. But how could it run in the meanwhile? On your theory. It would never have run in the meanwhile on your theory. I suppose that's correct, that the IAC claims would not have run until. Well, let me take this hypothetical. Let's assume that an IAC event occurred with Lawyer No. 2, whoever that happened to be. And Lawyer No. 3 said, boy, there was an IAC by Lawyer No. 2, prosecuted it, never really got anywhere, and then Martinez comes along. Does that revivify the IAC claim against Lawyer No. 2, even though No. 3 brought it up? Well, it depends. Is Lawyer No. 1 effective? Because Martinez is. . . Well, that's not part of my hypothetical. No, I understand, but Martinez gives you one shot at post-conviction claims, or ineffective assistance of counsel claims. And so Mr. Gonzalez has not had his one shot. So what I'm asking, if he'd had a shot about an IAC claim before Martinez, would Martinez resurrect the claim nonetheless? If those claims were not exhausted, Martinez is only a vehicle to overcome cause and prejudice for default. Okay, so from your perspective, the fact that if an IAC claim was brought but not exhausted, that's what Martinez does to help you? Yes. Okay. So really quick, I just want to get the record clear on the delay, because the district court judge or the district court order makes it sound like Mr. Gonzalez took two years to bring his Martinez claim. After Martinez. After Martinez. And so this is what actually happened. After this case went up to the Supreme Court on Rowan, this court remanded the case back June 6, 2013. The district court ordered merits briefing due September 20, 2013. Mr. Gonzalez filed that merits brief. The merits briefing was completed by November 22, 2013. And that same day, Mr. Gonzalez filed his motion to amend these claims in. And five days later, he also filed a motion to stay, pending competency restoration. The district court didn't make a decision on that until January 23, 2014. And that order, they kicked out our motion and asked us to refile it, complying with the local rule. We refiled . . . we filed a motion for reconsideration five days later. And the district court made a decision on that two days after that. And then Mr. Gonzalez filed a second motion to amend within two weeks of that order. And that was the February 14, 2014 motion to amend that was filed. And I can give you all the ERs to that, but that's how it happened. And as soon as we got back to district court, we were as diligent as we could be in bringing these claims back. Okay. Now you've got about four minutes, and let's hear from the other side. Thank you. Thank you. In support, John Todd, representing the respondent in this matter, the warden. To clarify, our position is that the statute of limitation ran within a year after 99 died. That the . . . in 2000, they filed a petition raising 60 claims. When they withdrew claims, the claims they withdrew were not the same claims that they are wanting to amend their petition. They had two IAC claims that they withdrew, trial IAC claims. I'm not . . . and they were pretty broad. One was a sentencing claim. One was a trial claim. These claims that they are offering to amend are more specific in terms of IAC. Would you agree that the claims that they're trying to relate back to, the core issue is quite different in the IAC claims that they're trying to prove, if you will, or you get before the Court now than what they withdrew back in 2000? Right. I mean, more so, their core difference is in their pleadings, they do not tie the new claims, the new IAC claims to any particular claims that were intended in the petition. But that's not what the district court said. I mean, I really haven't pierced them by looking at the two of them. But the district court didn't look at it that way at all, and I don't know that anybody has. The district court just said, no way, no matter what they were. Right? That's my understanding. In addition to that, the district court did indeed get to the fact that they did not tie them to any particular claim. That would be necessary for maybe a total relating back. It's not a relating back question. Well, they're raising a relating back question, but let's put that aside. Okay. All right? See, we're not talking about relating back. We're talking about the procedural default problem that they had at that point, which wasn't alleviated until Martinez. Right. Martinez in 2012. I know. So your position, if I understand it correctly, is that the statute of limitations had expired before Martinez. Correct. So Martinez would have to have been retroactive for it to do any good. Is that your position? Well, Martinez did not. If at all. I'm not sure if I understand what the court means by retroactive. Martinez was not a constitutional. So it didn't restart statute of limitations, if that's the question. My question would be a variation on that, and that is the IAC claims that are now being sought to be brought. Absent Martinez, they're procedurally defaulted. Yes. So until Martinez, they were procedurally defaulted, and there was simply no way that they could bring them as soon as the procedural default took place and was then in effect. They could bring them, but they don't point to it. Well, they'd be procedurally defaulted. There's no way they could then pursue them. Right. So what I'm wondering is why is it not an extraordinary circumstance that there was ineffective assistance of counsel, which I'll assume for purposes of the question, and because of the ineffective assistance of counsel, the claims that are otherwise plausible claims have been defaulted. Now, sometimes you can't get around extraordinary circumstances because the procedural default isn't excused, but Martinez quite a long time later says, well, you know what, there's a way around the procedural default if it comes from ineffective assistance of counsel. Why is not the ineffective assistance of counsel that procedurally defaults the claims an extraordinary circumstance? I'm not sure I understand the significance of extraordinary circumstances. Well, if it's an extraordinary circumstance, that tolls the statute of limitations. Well, are we talking about that toll? Yes, we are. Or rather, I am. So we're talking about something that stood in the way and prevented counsel after the due diligence from filing the claims. Right. Because they could have filed them, but you just said it would have been futile. They would have been dismissed. Okay. But Martinez was decided in 2012. Right. They filed them in 2014. Right. Well, that's a different question, but that's not where you started. Let's get to that point. Yeah. What I want to know is whether you're relying on the fact that he waits until 2014 after Martinez. Is that the real problem here, that the claims could have been brought as soon as Martinez is decided, but he waits two years? Is that the problem? The problem is that after Martinez was decided, there was, in our opinion, nothing that prevented counsel, Mark Gonzales, from filing, moving to amendment fishing. No, I don't. What was the case that was stayed in the district court? What was he going to file it in? There was no case going forward in the district court. The U.S. Supreme Court decided the Gonzales case in January. I believe it was January of 2013. But it wasn't returned to the district court until June. Until June of 2013. All right. So that's where you have to start, it seems to me. He couldn't have done something in the district court in a case that was stayed, could he have? I think they could. But even if they couldn't, if you just look at June 14, Martinez had been decided in 2012. What prevented that? What diligence did they show? Okay. Here's my question. Let's assume that he filed the papers that he's now filing, but two years after Martinez. Let's assume he filed them a month after Martinez. Is that then timely? No. Because? Because Martinez didn't start the clock again. The statute of limitations had run. So in order for them to file, they had to overcome the fact that something prevented them from filing. Well, a procedural default. A procedural default prevented them from filing. But not after 2012. Excuse me just a second. So that's my question. So as soon as Martinez is decided, he can bring them. But I'm saying, okay, so he brings them a month after Martinez. A day after Martinez. He brings them a day after Martinez. Is it timely then? Is it timely under the statute of limitations?  No. Because he still has to meet equitable tolling. If he meets, if he brings the day after Martinez, well, he's certainly diligent. Right. And nothing is preventing him from doing it. Nothing, it had been, he had been prevented prior to Martinez. Right. So I'd say under equitable tolling, if he brought them the day after, that would be fine. So there's a problem here. He would be entitled to equitable tolling at that point. If he brought them immediately after Martinez. Right. Okay. So now the question is, where does this, I mean, there were two questions then. One is how, because the case wasn't in the district court at that point, why isn't there a second tolling period, at least to the point that it's returned to the district court? Well, I'm not sure if there's law that prevents them from filing an amended petition at any point when he was, during the period after Martinez. This court had issued a stay as to the case. It was lifted clearly by June of 2013. There is no, I don't know if while that stay was pending, that that prevented them from filing, but clearly after June, when the cases returned, they made a decision to challenge the district court's bias and prejudice. In fact, decided instead of filing any sort of amended petition to seek writ of mandamus, which this court denied. So again, what prevented them? What prevented them from filing? So your argument is that he should have been diligent after the stay was lifted? Yes. All right. At the very, at the very least. So the next question then is the legal standard for equitable tolling. And where this, is it true that even if you take the entire period from June to February as ticking off limitations period, it was still timely if you take out the whole period before June? Is that right? In other words, if you apply a stop clock method of equitable tolling, this was timely. Is that right? If you take out everything until June 2013 and then don't work, just consider the time as running from June 2013, is it timely? No. Why? Because there was nothing that prevented them from filing prior to, during that time period. Okay. But I'm asking you whether, the limitations period is a year, right? And that had already run long ago. Well, but equitable tolling means that it doesn't run. It means that you're taking out the time period that if you say it could be equitably tolled, you're saying that it didn't run. It's tolled. No, no. Let me be clear because this goes back to my earlier point. I gather your position is, and even the opposing council perhaps, that the statute of limitations had arguably run before 2012. So these discussions about Martinez probably only have an impact if it is retroactive. Is that a fair statement? And I don't know what impact it had, but if it did, that would be it. Again, I guess I'm having trouble understanding exactly the court's thinking of retroactivity. Let me ask it this way. Some take the position that Martinez itself, its issuance constituted an extraordinary circumstance. So my question is, can an extraordinary circumstance begin after the statute of limitations has already expired? Yes, absolutely. Okay. So my question then is, can an extraordinary circumstance, if Martinez is such a thing, can it begin after the statute of limitations has already expired? And I guess my trouble is understanding we're not talking about the statutory provision that would start the statute to run anew, are we? No, that's a separate issue. Okay. What I'm saying is from roughly, I think September 2000 through roughly June of 2006, what told the statute during that time so that it would not have run during that period? Nothing. So from your perspective, the statute of limitations had run. Absolutely. So along comes Martinez. If it was an extraordinary circumstance, what difference does it make if the statute of limitations has already run? It doesn't. I mean, the claims would either have to meet equitable tolling or they would have to relate back. And in this case, neither of those options fit. And you're saying that once you get to Martinez, in response to my colleague's questions, you think that he was not diligent after Martinez was filed? Yes. It may not have made a difference. If you start at that point, it may not have made a difference because I think my colleagues believe that there's still enough time to file within a period of time which indeed may have already expired. Is that correct? Correct. So I've got a question that relates to this earlier period. Assume for the moment, although I don't ask you to concede, assume for a moment that there was ineffective assistance of counsel at the sentencing phase by the trial counsel. Assume further there was ineffective assistance of counsel at the PCR stage resulting in a default, procedural default, so that the IAC claim with respect to the penalty phase can't be brought. Why is that not an extraordinary circumstance? Because my assumption is that there's a perfectly good IAC claim at the penalty phase, there's a perfectly good IAC claim at the PCR stage. The combination of those means that the claim, which are perfectly good, can't be brought because of the procedural fault brought about by the ineffective assistance of counsel. Why is that not an extraordinary circumstance? I guess, Your Honor, my problem is understanding what significance, if it is an extraordinary circumstance, what significance that has concerning the statute of limitations. Well, that's the way tolling works. I mean, in general, I mean, take a case like Holland. I mean, when the petition was actually filed, it was late unless you take out the period of the extraordinary circumstance in that case. But when you take it out, it's not late. The limitations period hasn't run. That's what tolling does. It takes out a chunk of time as not counting towards the limitations period. That's what tolling is. You're tolling the statute. You're taking a measure of limitations from running at some point and you're picking it up at another point. So it can't run if it is, in fact, an extraordinary circumstance that counts for tolling purposes. I — if we're — you're talking about equitable tolling, right? Yes, that's what I'm talking about. That's what we've been talking about. And the statute has already run. But what do you mean by the statute has already run? I don't understand what you're saying. Whether it's run depends on whether there's tolling. Whether that period counts or not. And the tolling, the extraordinary circumstance that stood in the way that prevented the person from filing, there — the only thing here that is an argument that there was something that stood in its way is the inability to bring a procedurally defaulted claim. Correct. And Martinez in 2012 provided a vehicle to do that. Exactly right. So let me pursue what I'm after here. So what I'm trying to figure out is once we've got a procedural default of a perfectly good IAC claim and the reason we have the procedural default is IAC of the procedurally defaulting PCR counsel, if that's an extraordinary circumstance preventing him from bringing the claim, that, then, is an extraordinary circumstance that tolls the statute until that disability is lifted by Martinez. What's wrong with that analysis? The — other than the fact the statute's run, nothing is wrong. Nothing is wrong with that analysis. No, but wait a minute. At the time of the ineffective assistance of counsel, the statute has not run. So the question is do we get equitable tolling from the time of the ineffective assistance of counsel until Martinez? The ineffective assistance of what counsel? The ineffective assistance of counsel first off of the trial counsel and then the ineffective assistance of counsel of PCR counsel. The statute of limitations has not run in either of those two times. So the question — well, we are in the state court in PCR proceedings. The federal statute of limitations has not yet run. Okay. We're in state court. Right. So we have ineffective assistance of counsel in state court at the penalty phase. We then have ineffective assistance of counsel in state court at the PCR phase. And neither of those times has the federal statute of limitations run. Right. Arguably. Well, no, it hasn't. I mean, it may run later. But at this point, the plaintiff hasn't run. So the question is, at the time we get the second ineffective assistance of counsel which produces the procedural default, at that point the federal statute of limitations has not run. So the question is do we get equitable tolling from the period of that second procedural default by the — procedural default by the second counsel? Is that an extraordinary circumstance which would give us equitable tolling until Martinez is decided? That's the question. Some question. And it's your case. It's your case. If you agree with him, you lose. Well, then I don't agree. You earlier did agree with him. I don't. In that case, I don't agree. But I don't — You earlier specifically agreed that if he had filed the day after Martinez, he would have been okay. So I just need a straight theory as to how this works. The — in terms of the second PCR, the successive PCR, I think the statute had already run at that point anyway. But the procedural default takes place with the first PCR. Correct. And at that point, the statute of limitations has not run. And then the question is do we get equitable tolling from that time when the first PCR counsel procedurally defaults? I don't believe that's correct. This is all undefined law, right? Yes. We're talking about clarifying the meaning of Martinez and whether it relates back, right? Correct. And the U.S. Supreme Court hasn't decided these issues. All right. That doesn't matter. We have to decide it. So what should we decide? And why — I'm not sure why it's a relation back question, but maybe you can clarify  Well, I don't think it is — I don't think it does relate back. What I meant by that, so I can clarify at least for purposes of your answer to my colleague, the — in Holland, the Supreme Court said to receive equitable tolling, a petitioner must show diligent in pursuing his rights and that some extraordinary circumstance stood in his way. Your question is, in this case, you have — Martinez was not in effect. You have procedurally defaulted IAC claims. They're dead unless something revivifies them. Some take the position that Martinez opening this up made it possible for these, if you will, disembodied spirits floating in the non-procedurally default land to be revivified. That's why I say retroactive. It was decided in 2012, but these things have been around arguably. I think my colleague said the first one in the state was way back in 2000, whatever, two or three or whatever. No, it was earlier than that. Maybe even earlier. So do those get revivified? So that's what I mean by Martinez. Is that an extraordinary circumstance that because of its nature you have these disembodied spirits here? Can you revivify them by applying Martinez, i.e., is Martinez an extraordinary circumstance? Well, I think the emphasis is not so much on an extraordinary circumstance that stood in the way, but the second part of that and prevented the filing. These claims theoretically, as the Court has said, have been pending for years, been available for years if they exist at all, assuming we assume the Court's position that these claims are plausible. They've been around since the early or the late 90s, 1990s. In 2014, all of a sudden, out of the atmosphere, they're thought up and filed. This doesn't seem something the Supreme Court — Well, let me give you another hypothetical. Suppose they had been filed. Suppose after — suppose he had exhausted them, tried to exhaust them. They were defaulted, which is what happened. He comes back, and he does file them. All right? And the district court says, you can't do that. They're procedurally defaulted. Go look at Cole, and dismisses him. Then what? Then it's 2014, 2013 or whenever, 12, when Martinez is decided, and he comes back and he says, the case is still going on. Well, you were wrong about that, as it turns out, under Martinez. I do get at least to look at whether there was underlying IAC, so now I want them back in. What would happen then? My procedure is the Court would not allow them back in, that it was not such a significant change in the law that would allow him to revisit his prior decision. Really? That's my position. Let me get back to the question I asked earlier. If the statute of limitations has run, can an extraordinary circumstance that occurs later somehow revivify the statute of limitations issue? But in that instance, the statute of limitations couldn't have run. He filed it timely. I'm assuming he filed it timely. But it was dismissed. But it was procedurally defaulted. Right. Procedurally defaulted, but timely. But what good is a procedurally defaulted claim? I mean, it's... Whatever it is, it's not time-barred. If it was filed timely, it's defaulted. It's defaulted, right. It's, right, it's defaulted. It's a timely defaulted claim. Yeah. It's a fruitful gesture. And so if he comes back 12 years later and says, the case is still going on and you were wrong. And this is, you know, and the victim in the case would say, why has this case been in Federal courts for 12 years? I mean, this is the problem. You know, there are a lot of problems in this case. And the core problem to me is what happened in the trial court. The core problem to me is what happened at the penalty phase. There was an ineffective assistance of counsel. This guy was appointed at the very last minute. He did absolutely nothing. And the predictable happened. Then we get a PCR counsel who refuses to bring what's obviously an IAC claim, and therefore we don't find out. It's entirely possible, had this case been tried properly by an appropriate lawyer who's doing his job at the penalty phase, we would have a good record. We would have allowed the district judge to have a sense as to, okay, whether or not there should have been the death penalty imposed, and we could go forward. But the problem shows up when we get this last-minute appointment of the penalty phase counsel who doesn't do his job. I mean, the problem is not the Federal court's problem. The problem is what happened back there in the state court a long time ago. A long time ago that the Arizona Supreme Court reviewed and looked at the record and did their own analysis and concluded that the death penalty was appropriate in this case where the death penalty was appropriate. Based on the record in front of it, and the record in front of it was horrible because the ineffective assistance of counsel to the lawyer at the penalty phase. And if you were sitting on the Arizona Supreme Court back in the 90s, maybe you would have decided differently. But. Well, no, I wouldn't have because there was no record. And there was no record because the penalty phase lawyer didn't produce one. Well, there was a record. Maybe the what the, what has been produced since then has not been all that significantly different. There was a record. You have an individual who had committed, he was on parole at the time he murdered this man and stabbed the victim's wife. We know what happened. Counsel, let me ask you this. Following up on my colleague's question, let's assume for a moment that there was IAC, even a bad IAC. Let's assume that the year was 1999. Martinez was decided in 2012. Let's assume, being futuristic, let's assume it was decided 40 years later. And assume that the defendant was still alive. Would that have revivified the ability of counsel to basically move forward with an IAC claim at that point? No, I don't believe so. And I believe, I'm not positive, but I think there are cases under Rule 60, 60B-6, where they have refused to apply Martinez, which would support you. There might be some kind of a time limitation on the effect of Martinez. Well, or whether Martinez is an extraordinary circumstance. Are you aware of any cases that say that Martinez is an extraordinary circumstance within the meaning of Holland v. Florida? I am not. Here's a thought. It seems to me entirely possible, and we have not had conference in this case, obviously, but it seems entirely possible, given the questioning from the bench, that we may end up holding, it may or may not be unanimous, that there's equitable tolling, and that Claim 13 is going to be valid and that these IAC claims can be brought forward under Martinez. If that happens, you're probably in for another five years of litigation. At the very least. Yeah. Well, maybe that even makes the point I'm about to make stronger. Would the State be interested in mediating this case? No, Your Honor. The victim, the surviving victim, would not at all be interested. Okay. And I have to say, I'm extraordinarily sympathetic with the surviving victim. But if the State says we have no interest in mediation, just to get this over with and produce an LOOP, if the State has no interest, the State has no interest. Okay. Thank you. Thank you, Your Honor. Thank you. I don't have very much. I just want to readdress the Martinez retroactive question. Martinez was an equitable decision, so it is retroactive, and we're willing to file a supplemental. On what do you base that? We're willing to file supplemental authority to that. Do you have any case law that says that? Well, it's equitable relief. Well, I understand there are three circuits that have ruled otherwise. So what's your authority that says that Martinez is retroactive? I don't have any in front of me right now, but we're willing to supplement for the theory that equitable relief is retroactive, as Martinez itself was retroactive. The extraordinary circumstances in this case is one or both of the fact that Mr. Martinez just couldn't file these claims, and in combination with his incompetence, just compounded on that issue. I wanted to clear up the relation back statement that Mr. Todd made, that we didn't tie any of our claims back. In our opening brief on page 169, we listed our claims and where they relate back to, so that's in our brief. Also, Mr. Todd mentioned that Mr. Gonzalez filed a motion in district court trying to get reassignment of his case when it went back, and alluded to that was a more wasting time, and that's just not the case. The filing of those pleadings did not take one single day extra. It all happened parallel to the district court proceedings. And Mr. Gonzalez did not, when we went back to district court on June 6th, did not sit on his hands and did nothing. In Holland, the court stated that it was not required maximum feasible diligence, reasonable diligence is required, and as I laid out earlier for this court, as soon as we got back into district court, we had merits briefs that we needed to file and we were complying with those district court's orders, and immediately after that, in fact, the last day when we filed the reply in those briefings, we filed a motion to amend in November, and the district court kicked that motion out and then it took time trying to decide. And so by November, we were already filing our motion to amend. So I just wanted to make those points clear. Okay. Thank you both sides for your arguments. Gonzalez v. Ryan submitted for decision. If we want further briefing, we'll ask for it. So absent an order from this court, no necessity for further briefing. Thank you.
judges: W. Fletcher, Berzon, M. Smith